Good morning, Your Honor. May it please the Court. Patricia Barbosa, representing the appellant Aureliano Galvez. This morning, the Court has an opportunity to assist both parties, both businesses and disabled plaintiffs, to understand how to bring a case for discrimination based on the operations of a business and providing their services and goods. This is not a case in regards to physical barriers, for which there is a good amount of information as to how one brings up the burdens back and forth and the remainder. But in this case, what Mr. Galvez is seeking is for the Court to provide the parties with clear, concise, and enforceable standards on what it means to bring a claim for discrimination based on a service that was not provided in a full and equal manner. The District Court made several very large errors, both in statutory construction and interpretation of law. For the statutory construction problems, the Court did not evaluate or review plaintiffs' cross-motion for summary judgment, but simply mooted it out after finding that plaintiff had failed to meet an essential element of bringing a case. Additionally, all of the facts that were disputed and virtually all of the facts in defendants' motion for summary judgment or disputed were taken as truthful, even though plaintiff was not the moving party in that motion. Those facts are disputed. All of the facts are disputed. That's not an answer. What facts are disputed? Yes, the facts are disputed that AAA has reasonable methods for providing transportation to people in wheelchairs. It is disputed that, in fact, they train and assist their people in how to provide this service for them. It is disputed that Mr. Galvez did not request accessible transportation or a method to get home on the two incidents that he's discussed. It is also disputed that he did not ask for the policies and procedures or what happens in this. Well, let's start with the last one. I mean, the district court did not conclude that he did not ask for a policy, that there was evidence to support the proposition that he did ask for a policy change. Well, the court actually grudgingly came to it in a different sort of manner. But the question that we put before the court was the court only took what the other significant error is, the court only took a portion of the relevant statute and its subsections to make its determination. The issue is not is there a do you request a modification of policy, procedure or practice, which is what the actual code says. The court just said, did you ask to modify a policy? And importantly, and what relief do you seek? The relief that I seek is twofold. One, to have the court explain why it was error. No, I'm asking what relief you seek, not just from us, but in this lawsuit, you seek an injunction. What's the injunction supposed to say? The injunction is supposed to say you have policies that you've written out that say you provide transportation to persons in wheelchairs during emergency services. We want you to implement practices and procedures that actually work. See, that that's I'm not sure that's helpful because I think you need to identify what it is. I mean, the court you're asking the court to enter an injunction telling defendants to do something and just telling them do something nondiscriminatory isn't isn't very helpful. What is exactly the change you seek? Well, in fact, that is the largest error. I believe that the district court made because this was not a motion for for an injunction. This was a that's what the lawsuit is for. The lawsuit is for damages, attorneys fees and injunction. Well, but damages, attorneys fees, damages come under the state under the state law under the ADA. You're seeking injunctive relief. And I want to be fair about this. I had trouble figuring out exactly what it is you were seeking. And so that's why I posed the question. I think the question has to be have a preliminary question, which is, what are the actual policies and procedures that are being followed by Triple A? So, for example, Triple A stood up in the preliminary in the motion for summary judgment and told the court, how many tow trucks, how many rental cars, how many third party providers? Until they tell us, we don't know what to do. Well, that place is a burden that is untenable on the plaintiff because we don't know how. For example, Triple A has never motion for summary judgment. Presumably you've had opportunity discovery point by this point in time that it's not. It doesn't seem unreasonable to expect an articulation of what it is. That's absolutely true. And we did actually make suggestions. But let me go back to what's really happening here for the burden. Am I ever going to get an answer to the question of what policy change you seek? Yes. I want them to be open as to how many they actually serve. They say they take 6 million phone calls for people in their district from Fresno to San Diego every year. When we have asked them how many of those phone calls are for persons that require accessible transportation, no answer. You can ask Triple A when they come up. That's not answering the question I posed. It may be information that would be useful in fashioning an answer, but that's information you presumably obtain through discovery. But that's the issue. How is a plaintiff... And by the way, this was said that according to the district court, plaintiff has to provide this information before filing litigation. Before filing litigation, plaintiff has to tell them exactly what they're supposed to do, and then they have to refuse it, and then they come forward. Well, I'm not trying to answer that question. I'm trying to answer the question as best we know now. What is it you're proposing that defendants do? We have proposed that they review the number of calls that they actually require accessible transportation, that they utilize third-party providers, which is something they've begun to do during this litigation, that they actually investigate whether the accessible taxis that they have a list for actually are accessible, because every one of the calls for taxis in the exhibit of one of their representatives sent, when they did send taxis, were inaccessible taxis. Also... I'm looking at the record of this case, and I remember... I'm losing track, I guess. A dialogue back and forth between the auto club service representative and your client, where, and I can understand the frustration, passage of time, whatever, when he's asked about obtaining accessible transportation, he doesn't say, well, the last one you sent couldn't actually transport me. He says, no, I'll call a friend that will take me. Well, and I think that's an important issue. So what evidence do we have of the array of complaints that you're saying we should be dealing with? Well, let me just give you an example from their record, because we don't have any. We asked for all the complaints. We asked for all the discoveries. We've got nothing. But that doesn't help me now, because I have a record that I have. But I have the record that shows what they say they do, and that record indicates that when I deposed the representative for their policies and how they do emergency roadside services, Amos Haywood, one of the things that she indicated that she provided in the declaration for the motion for summary judgment was a list of what they called call logs. Now, they provided these call logs without any breakdown. They just said, this indicates excellent service. But, you know, it's not our job to referee discovery below. That's not what we do. And that's what you've been talking about for the last six or seven minutes. If I may tell you why this is an actual error in law, because the court didn't dismiss this because after discovery we couldn't get everything done. Look, the Auto Club has a policy. I am not clear on your position as to why this policy, this is BR 10 to 11, violates the act. Why does it violate the act? Because the act is not limited to a modification of policy. It has subsections that are in our complaint that indicates they have to take steps to ensure that they're actually providing the services. They can't give services that are unequal to that given to others. They can't deny a like experience, which this court has indicated several times is required under Title III. That's all very, very vague. I really don't know what you're talking about. So as I understood what the policy is, if you're not disabled and you need roadside assistance and your vehicle needs to be towed, you can ride along in the cab of the tow truck. That's correct. Right? Yes, that's correct. If you are disabled, maybe you have a wheelchair or you can't get into the truck because of your disability, then you're sort of stuck, right? Yes, and this is why I think it's important to indicate that it's not just a policy. It's how have they taken any steps to introduce it. When my client- Well, I was just going to say, but as I understand it from the policy, is their first question at that point is do you have somebody who can come and assist you? Yes, that's one of the questions they ask. Right? Yes. What's wrong with that? Why doesn't that- Because that relies- I don't think there's anything wrong with it, and there are some who would prefer their family, but of course everyone- That's a reasonable question that doesn't offend the statute, right? No, that is a reasonable question. The other question, though, is when someone says, no, I don't have a friend or family to pick me up, their next question is can we call paratransit for you, which is a government service that doesn't apply to any of this. All of the call logs indicate that they ask them can we paratransit for you. Secondly, the question of what they actually have, it doesn't matter if they ask you would you like assistance with this when they haven't done anything to bring it about. So, for example, during this- They could say, well, you can't get- Okay, we understand you can't get into the cab. You're on the freeway. The truck needs to be towed. We'll send a cab for you. A cab is not an- Be there in, you know, 20 minutes. Well, a cab for a person like Mr. Galvez, who's paralyzed from the waist down, is not an accessible form of transportation because they can't transfer into it, and many clients have fallen in when trying to transfer into a car. It isn't sufficient to say we'll send you something. It has to be full and equal benefits, and even in their- It has to be what? It has to be full and equal benefits that do not give unequal benefits. So in your view, the only way that the auto club could meet its obligations under the Act is to send a tow truck that is completely accessible to somebody in a wheelchair? Absolutely not, and that's never been the position. There are a variety of ways to provide transportation. There are accessible taxis, but they actually have to have a contract with them and work with them to do that. There are accessible third-party vendors, which we actually gave them the names of some, that will actually do it. There are- They contract, or whatever arrangements they make with their independent contractors, with hundreds if not thousands of tow truck companies. They only cited two in Los Angeles that they use for all of the 6 million calls. Your job, it seems to me, is to litigate this claim on behalf of your client under the ADA not to run their business for them. That's absolutely true. And that's what it sounds to me like you're doing. No, what I was answering was the question of, so what can they do? I'm giving advice. I am not saying- That's been the argument that was the hyperbole raised by defendants. We're not saying that because there are ways to provide transportation. What accommodations specifically did you ask for? We asked for accessible transportation. They provide transportation. That's their service. So under the ADA, they have a duty to evaluate their services and see how they can provide it to a person with disabilities. By the way- And remind us, you said it a minute ago, but just remind us, what specifically did your client ask the dispatcher for? That goes back and forth because the dispatcher didn't actually follow the rules that were here either. The first time, it was four hours before they finally tried to get somebody out. What did your client ask the dispatcher for? He indicated to them, I cannot get out and I cannot climb into a wheelchair. The first incidence, he said, I can't get out on the freeway and just wait for you to take me. The second one, he said, I'm in a wheelchair. I'm downtown. So that's what he was asking. That's not a request. That's a statement. What did he ask them for? He asked for assistance, the ERS benefit of being transported with his car. That when you call, when you call AAA, you say, I'm broken down at X and X and X. They can ask you what happened to it. Then they send somebody over. You don't say, I want to be taken to this location. I want my garage. I want this in this place. You ask them for assistance because you've broken down. And so Mr. Galvis was broken down. The dispatcher is not out there. The dispatcher is not standing on Interstate 5. What the dispatcher knows is what he is told by the client who is making the request. That he's in a wheelchair. So he knows the client is in a wheelchair. That's just the beginning. Why is it unreasonable for the auto company to ask this series of questions? I mean, what's wrong with this series of questions? Do you have a family member who can help you? What is it? Would you like us to call a taxi? Would you like us to call other transportation services on your behalf? So let me indicate that this is what the major problem and legal problem was in interpreting these. The question isn't, is their written policy so offensive that it's not usable? The question is, is that policy practices and procedures resulting in a full and equal benefit of the services? But you're getting way ahead of yourself because you haven't indicated that your client asked for an accommodation. And you haven't indicated at all what a reasonable accommodation in these circumstances would consist of. So it seems to me you are some distance away from relief under the ADA. So let me quickly answer that because I know I'm running out of time. Thank you. The issue isn't that simply you have a policy whether it's used or not, which I'm saying it's not used anyway. The issue is, can you actually demonstrate because the statute is not just that one subsection? If there's six million calls, how can you possibly make representations to us on a record such as this about whether the policy is followed or not? It doesn't make sense. I can tell you from their record that they have submitted, and my client, I've also had two other cases filed in this case for exactly the same basis. From their own records, from their representatives saying that there was excellent service, not a single one of them, except for somebody in a medical emergency that got an ambulance, was provided with anything like the service they requested. Three of them actually out of the 11 that they only gave me 11. So that's the only thing they were even cherry-picking, 11. Out of the 11, three left because they never showed up after hours. One waited five and a half hours and was towed in his car. The problem with this approach, ma'am, is that we're not an administrative body. We don't run the business. You don't run the business. We have a limited mandate, which is to review claims made under a federal statute, and the federal statute has certain requirements, and I'm trying to divine as to whether the requirements have been met, and I'm not there. If I may answer that, Your Honor, the main issue is that the court has gone to the injunction where I am saying we were dismissed because of a pre-litigation notice that doesn't exist in the court with information that we could never get before you file. I'm trying to get the court to give the standards of what it means to make a request and what it means to be able to bring this case, because this case doesn't follow any law that is out there for how things actually work. All the written policies for Baumann and Fortayn and Sterin have somebody saying, please do something, and they say, no, it is against our policy. Well, no. AAA says, yes, we will do this. They just don't do it. Okay. Thank you. You're over here, Tony. Thank you. Good morning, Your Honors. Bradley Lime Cooler on behalf of the Defendant's Automobile Club of Southern California, the American Automobile Association. Could you keep your voice up? We're having a little bit of difficulty here. Oh, and Auto Club Services, LLC, on behalf of defendants. I'm here to introduce to you the fact that the Automobile Club of Southern California takes very seriously its responsibility to handle calls from its disabled members, and to that end has developed a policy and practices and procedures by which it uses to provide accessible transportation to those members. And if you look at the sheer quantity of circumstances under which the Auto Club provides different types of services to these disabled members, it's important that the policy that the Auto Club has to follow must be a flexible one, and that's why it has designed this policy to provide different types of accessible transportation in different types of scenarios, whether that involves getting the car and vehicle mobile first, whether that involves providing an accessible taxi, whether that involves providing assistance with respect to contacting friends or family members, or going beyond those obligations to try to figure out what serves the disabled member best under those circumstances. The plaintiff indicated that she's asking the court to provide some kind of guidance for how to evaluate these claims, but this court has done exactly that in the Fortune case where it articulated a very specific test of what an individual plaintiff who alleges discrimination under Title III of the ADA has to prove, and that includes the fact that the defendant employed a discriminatory policy or practice and that the defendant discriminated against the plaintiff by failing to make a requested reasonable modification that was necessary to accommodate the plaintiff's disability. And here the plaintiff is... For instance, could just jump in the cab, right? They have that available. Of the tow truck. Correct. If need be.  Right? Straight up. It's easy. Potentially, yes. It might not be so easy if they might have five passengers with them. Right. Right. A non-disabled person, however... The first question the dispatcher has to ask is, would you like us to call somebody? Well, I think the first question that they should be asked is, are you in a safe location? Because the number one priority is there's difference in circumstances here, whether someone might be broken down on the freeway in a dangerous situation or in a parking lot, and that might turn the type of service that they receive. So if they're in a... So if... Well, let's... He was on the freeway, right? In one instance. In one of the alleged instances. In the other instance, he was downtown. Correct. Correct. And so in the first instance... So part of it, you go back and look at the actual factual record. The Auto Club keeps records of these calls. You can actually go back and listen to what was stated. And what happened was, in that first call, we thought it was a flat tire, and he informed the Auto Club that he had a spare tire. So the first thing, because he's on the freeway, was, hey, let's go try to fix the spare tire and get the vehicle moving. And so at that point, that was actually the last time Auto Club communicated with the plaintiff, was during that initial call, because the independent service provider that went out there made the judgment call that the freeway was a dangerous location in conjunction with, I think there was a California Highway Patrol officer that had arrived to try to get the plaintiff off the freeway, because that's a dangerous situation. He was on the left-hand side. He was in the far. Right. So it's a dangerous situation for the disabled member. It's a dangerous situation for the service provider. It's a dangerous situation for any officers or other vehicles that had come to assist him. And so in that situation, the determination was made, we're going to tow the member off the freeway to a nearby tire store to change his. Right. He remained in the vehicle, didn't he? Correct. He did during that particular instance. And that's sort of a good example of what we're talking about here, which is, okay, that might be what the policy is, and that's what the determination. We've come up with that policy working with the California Highway Patrol to figure out that might be the best option here, because it's a dangerous situation. What we haven't heard is, what is the alternative? Can you make a request for us to change that policy, given your individual circumstances? The policy, as reflected in the operations manual, has a series of questions about, is there someone who can, a friend or family member who you want us to call, otherwise we'll provide an accessible taxi of some kind, and at least as put forward by plaintiff, that's not what happened the first time. Now, you can say that circumstances caused a change, but the policy sounds reasonable, but execution from plaintiff's perspective was not so reasonable. It was not equivalent. Well, again, if you look at the actual record of what happened during that call, the information that Auto Club understood was that he was able to get the vehicle moving, and so then there wasn't the need for alternative transportation. So in the first instance there, the concept was, we can get the vehicle moving by changing the tire, just like anybody would, whether non-disabled or disabled, to get the car moving. And so there was no opportunity for any kind of, it never triggered the policy, essentially, because that's for providing accessible transportation of the individual, not the vehicle. And if you look at the second instance, that's pretty much the same thing that happened there, which was, if you look at the actual calls, it was, oh, I think I'm out of gasoline, oh, I think the battery's dead, et cetera. And so it wasn't really about finding transportation until the call had been serviced for a few hours. And then the question was raised, hey, I might need help here because we can't get the car working, can I get some transportation? And the operator began sort of asking about how we're going to transport the member and was informed that he has a friend that's going to come pick him up. So at that point, the auto club understood that he was in a safe location, and I think there's even record testimony about the tow truck, or the independent service provider actually talked to the security guard to make sure he was safe before he left the member in that location.  What we're missing here, what the district court basically found, was there's no specific request of how to change it or what specific procedure we'd like implemented. Did you understand the district court to say that he made a request for modification? I understood the district court. Just that he didn't specify what exactly it was. It was too vague. Is that what the district court said? What I understood the district court to mean was we're not going to place an impossible burden on the plaintiff before the litigation begins. We're going to say, can you please give me accessible transportation? That we never even got there. I think the district court said there's a disputed issue of fact whether or not asking the customer service provider that was, can you tell me about the policies, arguably is that, maybe there's a question of fact there. We don't believe that was. But what the district court found was you've now had the chance to conduct discovery. You've now deposed. You've gotten our policies. You've now deposed our individuals. At this point, you know what our practices are. You know what our procedures are. You haven't told me how you'd like me to change that. You haven't given me any evidence that any proposed change you want is reasonable or is necessary. And so how am I supposed to evaluate or give you an injunction on the relief for requesting when you can't even tell me what that change is? And I think when the plaintiff was up here, your honors asked that question. What change do you want to make? And the district court below is struggling with that exact same question because Auto Club needs the opportunity to evaluate, hey, is that a reasonable solution? So does the district court conclude, well, there is no discrimination under the act? I believe the district court reached that injury at all. I think the district court basically found that the policy that Auto Club had is nondiscriminatory. That's what I mean. The district court concluded the policy, whatever it was, whatever it is, is nondiscriminatory. Correct. Did the district court also conclude that the plaintiff had not identified a reasonable accommodation and therefore it never requested one? The district court, in a nuanced way, the district court basically found that there was no specific identified request in terms of bringing the case to ask the district court what to do at summary judgment. And so as a result, there's nothing for the district court to evaluate in terms of evidence, in terms of if you look at the actual cases that this court and the Supreme Court have identified, these policy modification questions, the question that's asked is there's usually a very specific question. Like, for instance, in the Baughman case, I would like to use Segways at Disneyland. That's how I can provide access and contact at Disneyland before the case began. I would like to be able to use that. And then there's an evaluation. Is that reasonable? Is that not reasonable? And the parties can introduce evidence. Here, there's no specific identification of what that is. For instance, if the plaintiff was to say, I want to provide accessible transportation by having more than two accessible tow trucks in Southern California, then the parties, then the court could evaluate. The parties can introduce evidence. Is that reasonable? Does that adequately serve the needs of, you know, 10 million people in Southern California? Or is that not a reasonable solution? How do we figure that out operationally? And there was no evidence on that. So I'm just, there are two, so one of the elements to make a, that a plaintiff must satisfy in order to maintain a claim, a public accommodations claim, is that the defendant discriminated against the plaintiff based upon his disability by failing to make a requested reasonable modification that was necessary to accommodate the disability. Right. So is it that the district court said you didn't make a reasonable, you didn't request a reasonable modification? Is that what the district court concluded? Yes. The district court concluded that the plaintiff did not identify a specific reasonable modification. Well. As a matter of law. Correct. There's no, there's no dispute. There are no factual disputes. There's no factual disputes that the plaintiff did not make a reasonable requested accommodation. Right. As a matter of law. And as a matter of law, the claim fails. Right, because there is no identified modification by which for the court to evaluate, essentially. Because the plaintiff here is asking, essentially asking the district court to enter an injunction as to how it would like Auto Club to modify its policies, because Auto Club is only liable if it failed to make a requested modification. That has to mean something, which means we have to have refusals. Well, what if the plaintiff just said, well, we want you to, when you, we tell you, when a person tells you that they're disabled, we want, what AAA should do is just say, we'll send a car, we'll send, you know, we'll just send a cab or we'll send a paratransport or some other kind of vehicle. Maybe they have their own little vehicle fleet that they can dispatch to help out. Right. Well, and that's, Auto Club doesn't have its own fleet of vehicles. What the Auto Club does is it works with third parties. Well, it could in this instance in order to accommodate, right? She could say, well, what you need to do is you need to have, whether they're your own or whether you have a little agency or something, a separate contract, but you need to have a little group of vehicles that could respond. Right, and in which case there would be opportunity for the plaintiff should introduce some kind of evidence on that question, why that's reasonable, why that is necessary, why there couldn't be these other alternatives that would sufficiently accommodate him. On the other hand, you're going to get people who say things like, you know, I'm four miles from home. My spouse will come get me or my mom or dad will be right over here to pick me up. I want you to take care of the car. I don't want transportation. I want to go, my wife will come get me. Right, and that happens. I don't want to, I'll call my husband because I don't want a tow truck operator lifting me up into the cab of a car and I'll call home, you will take care of the car. Yeah, and that happens with equal frequency between someone that's disabled and non-disabled. Do you have any information of the six million calls a year? How many are from people who are mobility or wheelchair disabled? That information isn't separately tracked at the Auto Club in terms of they don't, because we wouldn't even know in terms of a member would have to affirmatively identify themselves as disabled. A lot of the calls, again, if it's a vehicle breakdown, we wouldn't know if the member had a disability. And so that information isn't really separately recorded at Auto Club. The complaint here is what the individual plaintiff says happened to him suggests possibly a failure in execution. In particular, I think it's the August, I should have written down the date, I think it was the August episode where there were ultimately two different trucks that arrived at the scene. The first one couldn't tow. The second was a flatbed truck. And neither time was there anybody prepared to deal with his mobility issue. Suppose the claim is, OK, the policy which the Auto Club has is reasonable, but it doesn't get implemented effectively or didn't get implemented in my circumstance effectively. What is it that plaintiff should ask for there? Well, I think the plaintiff can conduct discovery. That's how they would like to proceed on their claim. There's nothing stopping the plaintiff from, you know, many, many people are Auto Club members. The Plaintiff's Council is well-connected with those individuals trying to see what kind of service they've received. And I would dispute that the service in that August instance was in any way inadequate. The first instance was that he had a spare tire. And the reason that the first person that was sent, they weren't able to tow the vehicle is for vehicle-based reasons. And I actually think if you look at the actual factual record, one of those cars that actually went was from the Freeway Service Patrol, which is an Auto Club. That person actually happened on the scene. So it's sort of a different scenario here. Another person that was there to assist plaintiff. What happens to a non-disabled person on the freeway in an emergency situation that says, I don't want to get in that tow truck? Well, and that's a hypothetical. That would depend on circumstances. I think you're not allowed to be down there. I imagine a police officer would stop you. You'd just have to wait out there on the freeway for a police officer to come by, a highway patrol officer to come by. Or someone could walk off the freeway or something like that. Suppose the person says, can you send a car? Well, a lot of the companies might refuse to pick up people on the freeway because that's a dangerous situation. Again, I'm not sure what the record evidence would be, but that's a hypothetical. I'll give the plaintiff, the appellant, just a minute for rebuttal. Thank you, Your Honor. There was no time left. There was no time left. I'm just going to give you a little minute to respond briefly to anything. I do want to respond. Make it quick and to the point. Yes. Okay. Section 12182 specifically says that it is discrimination to administer your program in a way that denies disability, persons with disabilities, full and equal access. He indicated it was not AAA's fault. It's the independent contractor out there on the freeway. Secondly, the same statute which was cited in our complaint indicates that it is discrimination. It's defined as discrimination if a public accommodation does not take steps as are necessary to ensure that they do not exclude or deny the goods and services to persons with disabilities. You just heard opposing counsel say we don't know what we actually, how many people actually call out of those 6 million. Now, when I actually deposed the person on this, I asked, well, don't you have to pay extra money if you're going to send an accessible taxi? We do, but we don't track that either. When I said, don't you have a certain number? When people call you and say I'm in a wheelchair, then they're going to need something. Don't you have to actually make a note? And according to their own policies, they're supposed to contract the supervisor and say we have a wheelchair user. Yet no one has taken any steps to identify what they would actually need. Okay. Now you're over your extra minute. Thank you very much. Thank you all. Thank you both. Thank you, counsel. Matter submitted. All rise.
judges: Parker, Paez, Clifton